UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DAVID VORCE and JUDITH VORCE,

    Plaintiffs,
v.                             CASE NO.: 8:18-cv-2810-T-33AAS

INTERNATIONAL FELLOWSHIP OF
CHAPLAINS,

    Defendant.
_____/

**ORDER**

This cause comes before the Court pursuant to Plaintiffs David Vorce and Judith Vorce's Amended Motion for Remand (Doc. # 7), which was filed on December 3, 2018. On December 10, 2018, Defendant International Fellowship of Chaplains filed a Response in Opposition to the Motion. (Doc. # 9). For the reasons that follow, the Motion to Remand is denied.

**I.**    **Background**

The Vorces, a husband and wife residing in Pasco County, Florida, filed a state court action against the Fellowship on October 2, 2018, alleging that the Fellowship breached an April 30, 2016, "Member Retirement Agreement." (Doc. # 1-2). The Agreement is before the Court and it reflects the Fellowship's promise to pay David and Joyce Vorce $25,000, each, per year via monthly payments, for the remainder of the Vorces' natural lives. (Id. at 7). The Agreement further

specifies that, should one of the Vorces die, the Fellowship will pay the surviving spouse $50,000 per year until the death of both David and Joyce. (Id.). The Agreement is predicated upon the Vorces' "investment of 27 years of faithful service" to the Fellowship as founders and high-level employees, including President. (Id. at 6). The Agreement contains a one-year provision in which the Vorces agree not to work in a competing capacity. (Id. at 7). However, that one-year period has now passed. The Agreement also provides that the Vorces may serve as honorary board members for the Fellowship and memorializes the Vorces' commitment not to make unauthorized disclosures of the Fellowship's confidential information. (Id.).

The Complaint contains two "counts" but the first "count" simply contains "general allegations" (for instance, stating that the Vorces seek an amount in excess of $15,000, describing the relationship between the parties, and setting forth the terms of the Agreement). (Id. at 2). As such, count one is not a count at all and does not actually assert a claim. The second count of the Complaint is for breach of contract.

According to the Vorces' Complaint, the Fellowship authored two letters, the first on July 6, 2018, and the

second on August 16, 2018, unilaterally indicating its decision to discontinue making monthly retirement payments to the Vorces. (Id. at 3). The Vorces, however, point out that the Agreement states: "No provision of this Agreement may be modified, waived or discharged unless such waiver, modification or discharge is agreed to in writing and signed by the Member and the Company." (Id. at 10).

After being served on October 30, 2018, the Fellowship removed the case to this Court on November 15, 2018, predicating subject matter jurisdiction on complete diversity of citizenship. (Doc. # 1). Thereafter, the Fellowship filed its Answer along with Affirmative Defenses. (Doc. # 4). The Fellowship's Answer explains that it did not cease making retirement payments to the Vorces willy-nilly. Instead, it arrived at the decision to cut the Vorces off after making numerous startling discoveries about the Vorces. According to the Fellowship: (1) David Vorce lied about his education and his past work experience; (2) David Vorce was arrested for assault and battery on a female acquaintance (Jane Doe) during his employment with the Fellowship; (3) the Vorces attended a mediation and settled a civil case brought by Jane Doe with the Fellowship's policy of insurance without authorization from the Fellowship; (4) later, Jane Doe quit claim deeded

3

real property to the Vorces; and (5) the Vorces used the Fellowship's resources in an unauthorized manner for their personal gain. (Id.) Accordingly, the Fellowship filed a Counterclaim against the Vorces containing the following counts: fraudulent misrepresentation (Count I); breach of fiduciary duties (Count II); and unjust enrichment/disgorgement of salary (Count III). (Id.)

At this juncture, the Vorces seek remand to state court, arguing that this Court lacks subject matter jurisdiction. The Vorces also seek dismissal of the Fellowship's Counterclaim.[1]

**II. Discussion**

When jurisdiction is premised upon diversity of citizenship, as is the case here, 28 U.S.C. § 1332(a) requires that the parties be citizens of different states and "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs."

**A. Diversity Requirements**

For a natural person, a complaint must allege citizenship, not residence, to establish diversity. Molinos Valle Del Cibao, C. por A. v. Lama, 633 F.3d 1330, 1342 n.12

---

[1] The Motion to Dismiss will be decided via separate order.

4

(11th Cir. 2011). Here, the Complaint alleges that the Vorces are residents of Pasco County, Florida. However, the parties have supplemented the record to demonstrate that the Vorces are, in fact, citizens of Florida. (Doc. # 20).

The Vorces' Complaint incorrectly states that the Fellowship, a non-profit corporation, has its principal place of business in Florida. (Doc. # 1-2 at 2). The Vorces, as citizens of Florida, seek remand on this basis. However, the Fellowship has provided documents showing that it is a Michigan corporation with its principal place of business in Michigan. Wayne Williams, the President of the Fellowship, filed an affidavit confirming that the Fellowship was incorporated in Michigan in 1997, and its principal place of business is in Michigan. (Doc. # 9-1).

Interestingly, Williams also points out that Judith Vorce herself electronically signed documents on behalf of the Fellowship during her employment from 2013 to 2017, stating that the Fellowship has its principal place of business in Michigan. (Id. at 3). The Fellowship notes that it became authorized to conduct business in Florida in May of 2008, but correctly explains that its activities in Florida did not relinquish its principal place of business in Michigan. (Doc.

5

# 9 at 2). The Court accordingly finds that the parties are completely diverse.

**B.     Amount in Controversy**

Although the threshold jurisdictional amount is $75,000, the Vorces' Complaint only specifies that they seek an amount in excess of $15,000. (Doc. # 1-2 at ¶ 1). "If the jurisdictional amount is not facially apparent from the complaint, the court should look to the notice of removal and may require evidence relevant to the amount in controversy at the time the case was removed." Williams v. Best Buy Co., 269 F.3d 1316, 1319 (11th Cir. 2001). Further, if "damages are unspecified, the removing party bears the burden of establishing the jurisdictional amount by a preponderance of the evidence." Lowery v. Ala. Power Co., 483 F.3d 1184, 1208 (11th Cir. 2007).

The Vorces contend that the amount in controversy is less than $75,000 because, although the Agreement calls for the payment of $50,000 for the remainder of their natural lives, at the time of removal, only a few monthly payments had been missed.  Although the Vorces' arguments are imprecise, the Court gathers that, at the time of removal, only three monthly payments of $4,166.66 had been withheld.  And, "Plaintiffs submit that as of the date of filing this Motion for Remand

6

all known and actually incurred compensatory and contractual damages incurred are less than $75,000.01." (Doc. # 7 at 4).

The Court is not persuaded by the Vorces' characterization of the amount in controversy. In <u>Pretka v. Kolter City Plaza II, Inc.</u>, 608 F.3d 744, 751 (11th Cir. 2010), the court instructed: "a court's analysis of the amount in controversy requirement focuses on how much is in controversy at the time of removal, not later." The Eleventh Circuit also stated: "the plaintiffs' likelihood of success on the merits is largely irrelevant to the court's jurisdiction because the pertinent question is what is in controversy in the case, not how much the plaintiffs are ultimately likely to recover." <u>Id.</u> The amount in controversy "is not proof of the amount the plaintiff will recover. Rather, it is an estimate of the amount that will be put at issue in the course of the litigation." <u>Id.</u>

Unlike <u>Pretka</u>, where the court was trying to determine the amount in controversy in a breach of contract case based on sum certain initial deposits paid to construct luxury condominiums, the present breach of contract case involves the payment of $50,000, yearly, over the course of the Vorces' natural lives. True, the Court is unable to determine the exact amount at issue. This is because no one can predict how

7

long any person is going to live. But, as pointed out in Pretka: "The law does not demand perfect knowledge or depend any less on reasonable inferences and deductions than we do in everyday life. As Justice Holmes observed, 'all life is an experiment. Every year if not every day we have to wager our salvation upon some prophecy based upon imperfect knowledge.'" 808 F.3d at 745 (citing Abrams v. United States, 250 U.S. 616, 630 (1919)(Holmes, J., dissenting)).

Despite the Vorces' arguments asserted in the Motion to Remand, it is apparent that the Vorces seek the full benefit of the bargain that they struck with the Fellowship - payment of $50,000 for the rest of their natural lives, not merely the recoupment of the missed payments as of the date of removal. The value of the Vorces' claim "determines the amount in controversy" and "[i]n order to ascertain this figure, the Court must identify 'the monetary value of the object of the litigation from the plaintiff's perspective.'" James v. Wash. Nat'l Ins. Co., No. 3:18-cv-628-J-34JRK, 2018 WL 4091001, at *5 (M.D. Fla. Aug. 28, 2018)(citing Federated Mut. Ins. Co. v. McKinnon Motors, LLC, 329 F.3d 805, 807 (11th Cir. 2003)).

In Roe v. Michelin North America, Inc., 613 F.3d 1058, 1064 (11th Cir. 2010), the court explained, "when a district court can determine, relying on its judicial experience and

common sense, that a claim satisfies the amount-in-controversy requirements, it need not give credence to a plaintiff's representation that the value of the claim is indeterminate." And, "Eleventh Circuit precedent permits district courts to make reasonable deductions, reasonable inferences, or other reasonable extrapolations from the pleadings to determine whether it is facially apparent that the case is removable. Put simply, a district court need not suspect reality or shelve common sense in determining whether the face of a complaint . . . establishes the jurisdictional amount." Smith v. Family Dollar Stores, Inc., No. 7:14-cv-161-SLB, 2014 WL 4793445, at *3 (N.D. Ala. Sept. 25, 2014).

The Court's common sense and experience lead to the finding that the Fellowship has met its burden with respect to the amount in controversy. In addition, the analysis provided in Stuckey v. Cintas Corp., No. 3:13-cv-1060-J-32JBT, 2013 WL 12202925 (M.D. Fla. Nov. 18, 2013), is also instructive. There, an employment contract entitled Stuckey to an annual salary of $150,000, payable weekly in the amount of $2,884.62. Id. at *2. Stuckey was terminated and he filed suit against his employer claiming that his termination was without cause. Id. at *2. After the employer removed the action, Stuckey sought remand, arguing that the amount in controversy had not

been met. Id. at *1.  Similar to what the Vorces now contend, Stuckey claimed that the amount in controversy "was at most $52,854.71," which represented past due wages and benefits up until the time of removal. Id.  The court rejected Stuckey's position, explaining that "[i]f [p]laintiff prevails in this case, [d]efendant will be obligated to pay the entire amount due under the contracts, *i.e.*, over $230,000, which is significantly in excess of $75,000, regardless of when such payments become due." Id. at *6.

The court was persuaded by the unconditional requirement in the employment contract that payment be made to Stuckey: "although [p]laintiff's future compensation may be paid periodically according to [d]efendants' normal payroll practices, it is clearly at issue and it is not contingent or speculative." Id.  The language in Stuckey's contract is akin to the language found in the Agreement between the Vorces and the Fellowship before this Court.

Unlike the payment of a percentage of a future profit or the disbursement of a discretionary dividend, the $50,000 yearly payment to the Vorces is not subject to future contingencies.  Nor is such payment based upon the Fellowship's whim or discretion.  "It is well settled that when an unconditional right to future payments exists, the

court may consider such payments in computing the amount in controversy." <u>Indianer v. Franklin Life Ins. Co.</u>, 113 F.R.D. 595, 600 (S.D. Fla. 1986), overruled on other grounds by <u>Ericsson GE Mobile Commc'ns, Inc. v. Motorola Commc'ns & Elecs., Inc.</u>, 120 F.3d 216, 220 n.14 (11th Cir. 1997).

The clarification that the <u>Ericsson</u> court provided is helpful to illustrate the jurisdictional question presented here. Ericsson and Motorola both bid on a profitable contract to work with the City of Birmingham on communications technology. <u>Id.</u> at 217. To Ericsson's chagrin, Motorola was awarded the multi-million dollar contract. <u>Id.</u> Ericsson sued in district court to enjoin the execution of the contract between Motorola and the City, arguing that unfair bidding practices led to Motorola's success. <u>Id.</u> Both Motorola and the City sought dismissal for lack of subject matter jurisdiction. <u>Id.</u> The district court denied the motions to dismiss, found in favor of Ericsson, and voided the contract between Motorola and the City. <u>Id.</u> at 218.

On appeal, the Eleventh Circuit ruled that the district court should have dismissed the case at the outset for lack of subject matter jurisdiction. <u>Id.</u> at 222. The Eleventh Circuit explained that, even if Ericsson prevailed, it would not be entitled to any money, nor could the court require the City to

11

award the bid to Ericsson: "Under Alabama law, the sole remedy available to [Ericsson] . . . is an injunction voiding the contract between Motorola and the City. . . . . There is no indication . . . that an unsuccessful bidder has any right or expectancy to insist upon the award of a contract." Id. at 221 (citations omitted).

The Eleventh Circuit found the amount in controversy was less than $75,000 because, even if Ericsson prevailed, "any benefit that [it] could receive from the injunctive relief awardable by the district court -- namely, the chance to rebid for the contract -- is, in our view, too speculative and immeasurable to satisfy the amount in controversy requirement." Id. at 221-222. In contrast, the Vorces' Complaint "seeks equitable relief" including "ordering the [Fellowship's] compliance with the terms of the Agreement in making the agreed upon monthly installment payments to the [Vorces]" for the remainder of their lives. (Doc. # 7 at 4). See also Forest v. Penn Treaty Am. Corp., 270 F. Supp. 2d 1357, 1368 n.45 (M.D. Fla. 2003)(stating that when "the right to future payments is unconditional and the relief sought in the lawsuit encompasses future payments," any future payments "may be considered when calculating damages for amount in controversy purposes"); Audrey v. Fed. Kemper Ins. Co., 798 F.

Supp. 1147, 1150 (E.D. Penn. 1992)(compiling cases stating that "when an unconditional right to future payments exists, the court may consider such payments in computing the amount in controversy.").

The United States Supreme Court has also explained that, in removed cases, a possibility that payments will terminate before the total reaches the federal jurisdictional minimum is immaterial in determining the district court's jurisdiction if the right to all payments is in issue. Aetna Cas. & Sur. Co. v. Flowers, 330 U.S. 464, 468 (1947). The Court, making reasonable inferences, determines that the amount in controversy exceeds $75,000. The Motion to Remand is denied.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

Plaintiffs David Vorce and Judith Vorce's Amended Motion for Remand (Doc. # 7) is **DENIED**.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>22nd</u> day of January, 2019.

*[signature]*
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE